IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DEON A. BAKER, | ) |
| | ) |
| Plaintiff | ) |
| v. | ) Case No. 19CV03809 |
| | ) Judge Ronald A. Guzman |
| | ) Magistrate Judge Susan E. Cox |
| THE CITY OF CHICAGO; L.C. GONZALEZ; | ) |
| R. RUIZ; C.J. DOLES; G.J. YOUNG; J.M. | ) |
| KOSTANSKI; in their individual capacities; | ) |
| CHICAGO POLICE DEPARTMENT'S BUREAU | ) |
| OF INTERNAL AFFAIRS | ) |
| | ) |
| Defendants | ) |

## AMENDED COMPLAINT

NOW COMES, Plaintiff DEON A. BAKER ("Mr. Baker") by and through his Attorney CIERRA NORRIS for his complaint against Defendants THE CITY OF CHICAGO, L.C. GONZALEZ, R. RUIZ, C.J. DOLES, G.J. YOUNG, J.M. KOSTANSK, and CHICAGO POLICE DEPARTMENT'S BUREAU OF INTERNAL AFFAIRS (Collectively "Defendants") pursuant to the First and Fourth Amendments of the Constitution as well as MCC §2-78-160.

### INTRODUCTION

1. Our nation's founding doctrines provide protections against violations of official power, including abuse by law enforcement. The Constitution as well as both federal and state law prevent police officers from exploiting their positions of authority such as the misconduct Mr. Baker was subject to.

2. The Officers, without probable cause or legal justification, unlawfully searched and seized the Plaintiff in violation of his fourth Fourth Amendment right to privacy.

## PARTIES

3. Plaintiff, DEON A. BAKER is a man that resides in Cook County, State of Illinois.

4. Defendant CITY OF CHICAGO ("the City") is a municipal corporation under the laws of the City of Chicago, located in the Northern District of Illinois. It is authorized under the laws of the State of Illinois to maintain the CHICAGO POLICE DEPARTMENT hereafter referred to as ("CPD") and the CHICAGO POLICE DEPARTMENT'S BUREAU OF INTERNAL AFFAIRS hereafter referred to as ("IA"), which acts as the City's agent in the area of municipal law enforcement, and for which the City is ultimately responsible. The City is a local government within the meaning of 42 U.S.C. § 14141. The City is responsible for funding CPD and IA as well as for the acts or omissions of CPD and IA.

5. Defendant the City was, at all times material to this Complaint, the employer and principal of the Defendant Officers described below.

6. Police Officers L.C. GONZALEZ, R. RUIZ, C.J. DOLES, G.J. YOUNG and J.M. KOSTANSK are City of Chicago employees with the CPD. Each is sued in his or her individual capacity for violating the individual constitutional and human rights of the named Plaintiff. They are referred to collectively herein as the "Officers."

7. At all times material to this Complaint, the Defendant Officers acted under color of state law as police officers of the City of Chicago, and acted in the course and within the scope of their employment.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343(a)(3) and (4), and 1367.

9. Venue lies in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (2).

10. CPD is the chief law enforcement agency in Chicago and has jurisdiction throughout the City.

11. During the course of conduct described in this Complaint, the Defendants received federal financial assistance from the United States Department of Justice, either directly or through another recipient of federal financial assistance.

12. As a condition of receiving federal financial assistance, the City and CPD certified that they would comply with all requirements imposed by Title VI and the federal regulations implementing Title VI. The assurances signed by the City bind subsequent recipients, including CPD to which the City disburses the funds. The City and CPD are responsible for ensuring that CPD complies with the requirements of Title VI and its implementing regulations.

## STATEMENT OF FACTS

13. On April 30, 2017, Mr. Baker, while awaiting the arrival of Doreasee Lee from her apartment near 15 S. Leamington Street, was detained without probable cause or reasonable suspicion that he was either in the commision of a crime or had committed a crime by three officers who jumped out of their vehicle after seeing Mr. Baker.

14. The Officers wore undercover uniforms and were supplied with body-worn cameras when they approached, physically seized and escorted Mr. Baker to the two vehicles they had recently departed from.

15. Officer Gonzalez placed his hands inside the pockets of Mr. Baker's hooded jacket, and thoroughly searched Mr. Baker's person for contraband, but none was found. After running his name through the police database, no warrants existed.

16. Officers added Mr. Baker's name to a "Contact Card" to show that they came into contact with Mr. Baker at that location and that he was no longer allowed to be in that area.

17. The Officers then threatened Mr. Baker, telling him that if he was caught standing in the same area again, he would be arrested. Mr. Baker was subsequently released from their custody.

18. Mr. Baker and Dorease Lee immediately went to the Fifteenth District Police Station to file a complaint against the Defendant Officers to report that he had been harassed.

19. Mr. Baker went to the desk sergeant to file a complaint when one of the Officers, L.C. Gonzalez, arrived at the station.

20. While Mr. Baker was in the process of filing the complaint, Officer Gonzalez attempted to interfere and convince Mr. Baker not to file a complaint.

21. Mr. Baker filed the complaint with Mr. Robert Kilmas, who logged the complaint as number 108503. A few days after the filing of this complaint, Mr. Baker was contacted by the Bureau of Internal Affairs for the Chicago Police Department, informing him that they retained the complaint.

23. On May 6, 2017, Mr. Baker was harassed by Chicago Police on the same block where he had been unlawfully searched and seized.

24.     Furthermore, Mr. Baker was arrested for Armed Habitual Criminal and Possession charges. by L.C. Gonzalez and R. Ruiz who are in clear violation of COPA policy, which prohibits officers from harassing, intimidating or punishing individuals who have a complaint filed against them.

25.     Mr. Baker was unable to complete his complaint against the Officers because of this arrest as he could not get into contact with the Investigator because of his incarceration.

26.     At the time Mr. Baker filed the complaint against the Defendant Officers, he exhausted all administrative remedies available to him.

**Count I -42 U.S.C. § 1983**
**Unlawful Search and Seizure-Fourth Amendment**
**Defendant Police Officers and City of Chicago**

27.     Paragraphs 1 through 26 are incorporated as though fully stated herein.

28.     At all times relevant to this claim, the Officers were acting under color of state law in their capacities as Chicago law enforcement officers.

29.     Mr. Baker had a clearly established constitutional right under the Fourth Amendment to the United States Constitution to be secure in his person against unreasonable search and seizure. The Fourth Amendment guarantees the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized. U.S.C.A. Const. Amend. *Terry v. Ohio*, 392 U.S. 1, 8 (1968).

30.     The Fourth Amendment of the United States Constitution focuses on "the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security." *Terry,* 392 U.S. at 19. "[A] police officer may conduct a brief, investigatory stop of a person where

the officer reasonably believes that the person has committed, or is about to commit, a crime." *Timmsen*, 2016 IL 118181, ¶ 9. The standard for a stop is "reasonable, articulable suspicion." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000). "Although 'reasonable, articulable suspicion' is a less demanding standard than probable cause, an officer's suspicion must amount to more than an 'inchoate and unparticularized suspicion or "hunch"' of criminal activity." *Timmsen*, 2016 IL 118181, ¶ 9 (quoting Terry, 392 U.S. at 27). In accordance with *Timmsen*, the reasonability of a stop is based on the totality of the circumstances in each case.

31. Here, the underlying search was unreasonable and Mr. Baker was subjected to an unlawful arrest without probable cause. In the Officer's arrest report from May 6, 2017, they state that they observed someone engage in two hand to hand transactions and return to a vehicle where they believed the subject to be concealing a weapon. The Officers proceeded to perform an investigatory stop, where they recovered cannabis on the suspect. While the suspect was handcuffed, Officer Ruiz took his keys off of his belt loop without consent and searched his car to locate a firearm, but not in relation to the narcotic transactions.

32. Pursuant to *People v. Oliver* and *People v. Trisby* engaging in a single transaction of unidentified objects does not support probable cause to believe that a drug transaction has occurred. See *People v. Oliver,* 368 Ill.App.3d 690, 697–98, 307 Ill.Dec. 38, 859 N.E.2d 38 (2006) and People v. Trisby, 2013 IL App (1st) 112552, ¶ 15, 989 N.E.2d 650, 654. Because the hand to hand transaction isn't enough in itself to establish probable cause or reasonable suspicion, the Officers did not have enough information to stop Mr. Baker in the first place, making the subsequent search and arrest unlawful.

33. Moreover, Mr. Baker's car was legally parked with no tickets. In connection with the criminal proceedings on this case, the Officers allege that they did not know Mr. Baker. The Second Amendment protects citizen's right to keep and bear arms, meaning that possession of a gun is not *per se* illegal nor does it establish reasonable cause for a search of someone's vehicle.

34. Because the Officers claim to not know Mr. Baker, they would not know that he was a felon who could not legally possess a firearm.

35. Prior to and at the time of the search, the Officers failed to ask Mr. Baker whether he possessed a valid Firearm Owner's Identification (FOID) card or a Conceal Carry License. Consequently, because the Officers did not know whether he legally possessed the firearm and possessing a gun is not *per se* illegal, the Officers subjected him to an unlawful search.

36. In this case, the Officers had already searched Mr. Baker's person prior to searching his car, so they no longer would've been concerned that Mr. Baker was presently dangerous and armed.

37. In this case, the recovery of the gun and the search was unlawful because the officers did not have a legally valid basis to search the vehicle in that Mr. Baker did not give consent, there were no exigent circumstances necessitating the Officer's search of the car and they did not establish probable cause for searching the vehicle.

38. The Officers intentionally, knowingly, recklessly, and excessively subdued, restrained, detained, and falsely apprehended Mr. Baker without any reasonable justification or probable cause.

39. The Officers forcibly seized Mr. Baker's body and forcibly and intentionally restrained him against his will, despite lacking any legally valid basis to do so

40. The Officers did not at any time have probable cause, reasonable suspicion, or any other legally valid basis to believe that Mr. Baker committed or was committing any violation of the law prior to seizing and continuing to restrain him.

41. The Officers did not at any time have a warrant authorizing such seizure of Plaintiff's body.

42. The Officers' actions, as described herein, were undertaken intentionally, maliciously, willfully, wantonly, and/or in reckless disregard of Mr. Baker's federally protected rights.

43. The Officers engaged in the acts and omissions described herein pursuant to the custom, policy, and practice of City of Chicago and the Chicago Police Department which encourages, condones, tolerates, and ratifies false arrests, unlawful seizures, and deprivation of constitutionally protected interests by law enforcement officers.

44. The acts or omissions of Officers, including the unconstitutional policy, procedure, custom, and/or practice described herein, were the legal and proximate cause of Mr. Baker's damages.

45. As a direct result of Defendant officer's unlawful actions as described above, Mr. Baker suffered and continues to suffer actual physical harm, embarrassment, humiliation, emotional and economic injuries in an amount to be proven at trial.

**WHEREFORE**, DEON A. BAKER., seeks judgment against Defendant Officers, and the CITY OF CHICAGO, awarding compensatory damages and punitive damages in an amount in excess of seventy-five thousand dollars ($250,000), attorney's fees, costs, plus interest, and any further relief this Court deems appropriate and just.

**COUNT II**
**VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983**
**First Amendment − Retaliation for Protected Conduct**

**Against Defendant Officers and City of Chicago**

46. Paragraphs 1 through 45 are incorporated as though fully stated herein.

47. Mr. Baker engaged in constitutionally protected conduct of standing outside on the sidewalk.

48. Defendant Officers detained and interfered with Mr. Baker's right to exercise his First Amendment right to freedom of assembly.

49. Pursuant to MCC §2-78-160, no person shall retaliate punish, intimidate, discourage, threaten or penalize other persons for reporting misconduct, making a complaint, conducting an investigation, complaining to officials, providing information, testimony or documents in an investigation, or cooperating with or assisting the Office in the performance of its powers and duties as set forth in this chapter.

50. On April 30, 2017, Officer Gonzales discouraged Mr. Baker from filing a complaint against the Officers alleging both harassment and an unlawful search and seizure. The Officers were put on notice of the complaint at this time.

51. In relation to this protected conduct, the Officers intentionally, knowingly, maliciously, recklessly, unreasonably, and/or gross negligently harassed and then arrested Mr Baker as a result of him filing a complaint against them on April 30, 2020 on May 6, 2017.

52. Officer Young, Doles Ruiz saw Mr. Baker standing on the Leamington block at 11 S. Leamington and proceeded to harass, punish and penalize Mr. Baker in retaliation for his complaint against them. This resulted in an illegal search of Mr. Baker's car and seizure of his property.

53. Mr. Baker's retaliatory detainment was based on the Officers knowing, deliberate, and reckless actions for the fact that Mr. Baker had filed a harassment complaint against the Officers.

54. Such retaliation would be seen as a hindrance to people from filing complaints against Officers and intervened with Mr. Baker's ability to follow-up with the complaint.

55. There was a causal connection between Mr. Baker's constitutionally protected conduct and the adverse retaliatory actions taken by the Defendant Officers against Mr. Baker.

56. Officers conduct in detaining Mr. Baker deprived him of his liberty without his consent, probable cause, legal justification, just cause, or any other legally valid reason.

57. The acts complained of were carried out by the individual Officers in their individual capacity as police officers, pursuant to the customs, usages, practices, procedures, and the rules of the City of Chicago, all under the supervision of ranking officers of said department.

58. As a proximate result of the illegal and unconstitutional acts of the Defendant officers, Mr. Baker was harmed and suffered damages for his mental, emotional injury and pain, mental anguish, humiliation, and embarrassment.

**WHEREFORE**, DEON A. BAKER., seeks for judgment against Defendant Officers, and the CITY OF CHICAGO, awarding compensatory damages and punitive damages in an amount in excess of seventy-five thousand dollars ($250,000), attorney's fees, costs, plus interest, and any further relief this Court deems appropriate and just.

**COUNT III– State Law Claim**
**Respondeat Superior**
**(State Law Claim against City of Chicago)**

59.     Paragraphs 1 through 58 are incorporated as though fully stated herein.

60.     In committing the acts alleged in this Complaint, each of the individual Officers were members of, and agents of, the CPD, acting at all relevant times within the scope of their employment.

61.     Defendant City of Chicago is liable as principal for all torts in violation of state law committed by its agents.

**WHEREFORE,** DEON A. BAKER., seeks for judgment against Defendant Officers, and the CITY OF CHICAGO, awarding compensatory damages and punitive damages in an amount in excess of seventy-five thousand dollars ($250,000), attorney's fees, costs, plus interest, and any further relief this Court deems appropriate and just.

### COUNT IV – Negligence
### (State Law Claim Against the City of Chicago)

62.     Paragraphs 1 through 61 are incorporated as though fully stated herein.

63.      The CPD committed negligence by engaging in "willful and wanton" misconduct against Mr. Baker.

64.    To prove a claim for negligence involving willful and wanton conduct, a plaintiff must demonstrate the defendant owed him a duty, the defendant breached that duty, and the breach proximately caused the plaintiff's injury.. Allen v. City of Chicago, 2011 IL App (1st) 101011-U, ¶ 20.

65.     Questions of whether a duty has been breached and whether the plaintiff's injury proximately resulted from that breach are questions of fact for the trier of fact, whereas the existence of a duty is a question of law properly addressed by the court on a motion for summary

judgment. (*Horrell v. City of Chicago* (1986), 145 Ill.App.3d 428, 99 Ill.Dec. 524, 495 N.E.2d 1259.) Hernandez v. Vill. of Cicero, 151 Ill. App. 3d 170, 172, 502 N.E.2d 1226, 1227 (1st Dist. 1986)

66. It is well established that a municipality and its employees are not liable for failure to supply general police or fire protection, but liability has been found where the municipality owes a "special duty" to a particular individual. (*Marshall v. Ellison* (1985), 132 Ill.App.3d 732, 87 Ill.Dec. 704, 477 N.E.2d 830.)

67. In determining whether a special duty is owed, the following requirements must be met: "(1) the municipality must be uniquely aware of the particular danger or risk to which plaintiff is exposed; (2) there must be allegations of specific acts or omissions on the part of the municipality; (3) the specific acts or omissions must be either affirmative or wilful in nature; and (4) the injury must occur while the plaintiff is under the direct and immediate control of employees or agents of the municipality. Hernandez v. Vill. of Cicero, 151 Ill. App. 3d 170, 172–73, 502 N.E.2d 1226, 1228 (1st Dist. 1986).

68. Here, CPD was aware that Mr. Baker had filed a complaint against Officers for their prior conduct. Second, the same Officers who were named in the complaint filed by Mr. Baker violated his rights by unlawfully searching his person/vehicle and subsequently arresting him. Third, the Officers wilfully ignored the proper procedures in place by the CPD when a complaint is filed against an officer and how they are supposed to conduct themselves regarding citizens who file complaints. As a result of the Officer's actions while Mr. Baker was in the direct and immediate control of CPD officers, some of which were named on the complaint filed CPD, owed a special duty of care to Mr. Baker.

69. The Officers breached that duty when they detained and arrested Mr. Baker after he filed a complaint against those Officers. According to MCC §2-78-120 of the Civilian Office of Police Accountability (COPA), "No person shall retaliate punish, intimidate, discourage, threaten or penalize other persons for reporting misconduct, making a complaint, conducting an investigation, complaining to officials, providing information, testimony or documents in an investigation, or cooperating with or assisting the Office in the performance of its powers and duties as set forth in this chapter." Here, the Officer's breach of their duty is the reason that Mr. Baker is suffering from an injury. If CPD had not intimidated and wrongfully arrested him, Mr. Baker would not be in jail and suffering the related injuries.

70. The Officers caused damage to Mr. Baker and are the cause in fact of that damage. The Officers knew of the complaint and the policies, rules and procedures involved with citizens who make complaints. They decided to ignore this while thereathing and arresting Mr. Baker, thereby causing him to lose his job and suffer both monetary and emotional damage. But for the harassment, arrest and subsequent imprisonment, Mr. Baker would not have suffered the damages that he has.

71. The damages that CPD inflicted on Mr. Baker are the monetary costs of job loss, lack of ability to earn future wages and being incarcerated during the pendency of his criminal case. This also caused mental and emotional injury and pain to Mr. Baker.

**WHEREFORE**, DEON A. BAKER., seeks for judgment against Defendant Officers, and the CITY OF CHICAGO, awarding compensatory damages and punitive damages in an amount in

excess of seventy-five thousand dollars ($250,000), attorney's fees, costs, plus interest, and any further relief this Court deems appropriate and just.

## COUNT V- Indemnification

72. Paragraphs 1 through 71 are incorporated as though fully stated herein.

73. Pursuant to 65 ILCS 5/1-4-6 regarding Indemnification of police officers, the municipality in whose behalf the member of the municipal police department is performing his or her duties as police officer shall indemnify the police officer for any judgment recovered against him or her as the result of such injury, except where the injury results from the wilful misconduct of the police officer, to the extent of not to exceed $1,000,000 including costs of the action.

74. Furthermore, Illinois law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

75. The Officers are employees of Defendant City of Chicago who acted within the scope of their employment in committing the misconduct described above.

76. Defendants City of Chicago is thus liable for any judgement recovered against the Officers.

**WHEREFORE**, DEON A. BAKER., seeks for judgment against Defendant Officers, and the CITY OF CHICAGO, awarding compensatory damages and punitive damages in an amount in excess of seventy-five thousand dollars ($250,000), attorney's fees, costs, plus interest, and any further relief this Court deems appropriate and just.

**Dated August 20, 2020**

Respectfully submitted,

Cierra N. Norris #61617
ARDC: #6325783
The Law Office of C.N. Norris, LLC                 _____
55 E. Monroe St. Ste. 38                                              Cierra Norris
w: 312.625.6129
c: 234.525.8833